# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 98-2230/2305

_____

| | |
|---|---|
| Peter Cannice, | * |
| | * |
| Appellee/Cross-Appellant, | * |
| | * Appeals from the United States |
| v. | * District Court for the Southern |
| | * District of Iowa. |
| Norwest Bank Iowa N.A. and | * |
| Norwest Bank Iowa N.A. Card | * |
| Services Division, | * |
| | * |
| Appellants/Cross-Appellees. | * |

_____

Submitted:  March 11, 1999

Filed:  August 13, 1999

_____

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
NANGLE,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

A jury awarded damages to Peter Cannice, who suffers from depression, on his claims for harassment and discrimination under the Americans with Disabilities Act of 1990 (ADA), *see* 42 U.S.C. §§ 12101-12213.  Norwest appeals from the trial court's

_____

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

denial of its motion for judgment as a matter of law on the harassment claim, from the inclusion of front pay in the damages awarded to Mr. Cannice, and from the award of attorney's fees and costs to him. (Although there are two defendants, for the sake of simplicity we treat them as one entity in this opinion.) Mr. Cannice cross-appeals from the trial court's grant of judgment as a matter of law to Norwest on the discrimination claim and on the extent of the damages to which he was entitled. We hold that there was insufficient evidence to submit either of Mr. Cannice's claims to the jury and that, as a result, the issues of damages, attorney's fees, and costs are moot; we also remand the case.

I.

The ADA provides that an employer covered by the act "shall not discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... terms, conditions and privileges of employment." *See* 42 U.S.C. § 12112(a). The act says nothing explicit, however, about harassment (or, as it is sometimes called, hostile work environment).

We have not yet had occasion to consider whether harassment on account of a disability is actionable under the ADA. *See Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 788 (8th Cir. 1998); *see also Wallin v. Minnesota Department of Corrections,* 153 F.3d 681, 687-88 (8th Cir. 1998), *cert. denied*, 119 S. Ct. 1141 (1999). It is not necessary for us to reach that question here, however, because, in any case, Mr. Cannice presented insufficient evidence that the alleged harassment occurred "because of" his disability, as the plain language of the statute would require if such harassment were actionable. *See*, *e.g.*, *Robinson v. Neodata Services, Inc.,* 94 F.3d 499, 502 (8th Cir. 1996), and *Price v. S-B Power Tool*, 75 F.3d 362, 365 (8th Cir. 1996), *cert. denied*, 519 U.S. 910 (1996).

Mr. Cannice offered evidence of a number of incidents that he maintained constituted harassment on account of his disability. For example, he was not promoted

to the position of group leader, although several Norwest employees testified that he was better qualified than the person who was given this position. In addition, his lunch breaks and bathroom breaks were more closely monitored than those of other employees, and his desk was moved closer to that of a supervisor, both of which occurrences were distressing to him in his depressed state. A witness also testified that Mr. Cannice was asked to remove medication from his desk. Finally, when a friend and colleague left Norwest to take employment elsewhere, one of the group leaders in Mr. Cannice's department tossed a tissue into his office cubicle with a note about a "crying towel"; Mr. Cannice believed that this was a reference to the fact that he sometimes cried at work.

Mr. Cannice complained to the bank's human resources department about the tissue incident, and he maintains that the manner in which the department investigated his complaint itself constituted harassment. First, the department asked him to put his complaint in writing; this caused him anxiety, he says, and it took him almost a month to comply. There was then an additional month's delay before the department actually began its investigation, in the course of which Mr. Cannice himself was interviewed on several occasions about his complaint and received a formal warning about his own allegedly inappropriate conduct.

Although Mr. Cannice offered evidence indicating that Norwest was aware of his mental state at the time of these incidents (see below), he did not show that this knowledge in any way motivated the offensive conduct. Only the request to put away his medication and the tissue incident could even colorably be connected to Mr. Cannice's mental condition, and we do not think that these events could be described as either pervasive or severe. *See Wallin*, 153 F.3d at 688. The other matters caused him anxiety and may have exacerbated his disability, but there is no evidence that they happened "because of" his disability. Insensitivity alone does not amount to harassment; the ADA, like Title VII, is not in effect a "general civility code," *Oncale v. Sundowner Offshore Services, Inc.*, 118 S. Ct. 998, 1002 (1998). We do not

believe, therefore, that a reasonable jury could have concluded that Mr. Cannice was harassed because of his disability. Accordingly, we reverse the trial court's denial of Norwest's motion for judgment as a matter of law on Mr. Cannice's harassment claim.

II.

Mr. Cannice also maintains that Norwest failed to make reasonable accommodations to his depression and that this failure constituted discrimination on account of his disability. This alleged discrimination, together with the alleged harassment, he contends, caused his condition to deteriorate and eventually caused him to take short-term and then long-term disability leave. Under the ADA, one form of discrimination is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is ... an employee," *see* 42 U.S.C. § 12112(b)(5)(A); this language is tracked in the regulations applicable to the ADA, *see* 29 C.F.R. § 1630.9(a), and is discussed at length in the commentary accompanying the implementation of these regulations, *see* 56 Fed. Reg. 35726 (overview of regulations and appendix), 35726, 35729, 35731 (1991), and in the appendix providing interpretive guidance on, and a section-by-section analysis of, § 1630, *see* 56 Fed. Reg. 35739 (appendix), 35743-45, 35747-50 (1991).

In order to be entitled to an accommodation, the employee must inform the employer that an accommodation is needed. *See Miller v. National Casualty Co.,* 61 F.3d 627, 630 (8th Cir. 1995). "Once a qualified individual with a disability has requested provision of a reasonable accommodation," the above-noted appendix explains, "the employer must make a reasonable effort to determine the appropriate accommodation." *See* 56 Fed. Reg. 35739, 35748 (1991). This means that the employer should first analyze the relevant job and the specific limitations imposed by the disability and then, in consultation with the individual, identify potential effective accommodations. In other words, the employer and the employee must work together in good faith to help each other determine what accommodation is necessary. *See Fjellestad v. Pizza Hut of America, Inc.*, No. 98-2071, 1999 WL 391911, at *5-*7 (8th

Cir. June 16, 1999). The appendix noted above further suggests that the employer may find it helpful to consult the federal Equal Employment Opportunity Commission or disability constituent organizations when devising accommodations. *See* 56 Fed. Reg. 35739, 35748 (1991).

Mr. Cannice offered ample evidence to show that he alerted Norwest to the existence of his disability. For example, Mary Pierson of the human resources department recorded in her notes from one meeting with Mr. Cannice that he told her that he had a stress syndrome. Mr. Cannice also gave information regarding the ADA to Norma Jean Kingsley in the human resources department, and both parties agree that he requested an unmonitored telephone line so that he could talk with his "support network" (Norwest monitored its employees' telephone calls for training and quality assurance purposes). Finally, Mr. Cannice had experienced a panic attack in the office of his supervisor, occasionally cried at work, and was known to be taking medications; these events, Mr. Cannice argues, should have alerted Norwest to his difficulty. A jury could reasonably have found, therefore, that Mr. Cannice informed Norwest of his disability and requested some accommodation.

The trial court, in granting Norwest's motion for judgment as a matter of law on the discrimination claim, ruled that "the evidence does not support [the] contention that [Mr. Cannice's] employer knew of accommodations but refused to place him in a position that would accommodate his disability." Mr. Cannice contends that the trial court wrongly characterized the defendants' duty, because the court suggested that Norwest was obligated to provide only those accommodations of which it happened to be aware.

Mr. Cannice argues that once he informed his employer of his disability and requested an accommodation, it became Norwest's responsibility to look actively for a solution through the interactive process described in *Fjellestad*, 1999 WL 391911, at *5-*7. The employee is not required to bear the full burden of devising suitable

accommodation, Mr. Cannice points out, particularly when he suffers from mental illness; the employer must meet him halfway. *Cf. Taylor v. Phoenixville School District*, 174 F.3d 142, 157-58, 160-61, 163-64 (3d Cir. 1999), and *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285-86 (7th Cir. 1996). In particular, Mr. Cannice suggests that Norwest should have used the ADA materials that he supplied and that Norwest should have consulted with him about his disability and possible accommodations, such as a more flexible work schedule. *Cf.* 29 C.F.R. § 1630.2(o) (2)(ii). Mr. Cannice concludes that Norwest's failure to take such active steps itself constitutes disability discrimination under 42 U.S.C. § 12112(b)(5)(A). We have recently held, however, that "there is no per se liability under the ADA if an employer fails to engage in an interactive process," *Fjellestad*, 1999 WL 391911, at *5, so this claim fails.

Mr. Cannice, moreover, did not make out any other kind of submissible case under the ADA, because he lacked proof that an accommodation of his disability would have allowed him to keep his job. That was an element of his case. We emphasized in *Fjellestad*, 1999 WL 391911, at *7, that the "employee still carries the burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the essential functions of the job." Mr. Cannice and his experts testified that his condition deteriorated while he was at Norwest and that this was at least in part due to the environment in the department where he worked. It does not appear to us, however, that a reasonable fact finder could conclude that any of the difficulties that he experienced there were due to Norwest's failure reasonably to accommodate his disability or that he left his job because of such a failure to provide an accommodation.

Most of the incidents that Mr. Cannice describes as particularly distressing, and thus as aggravating his condition, were also part of the basis for his harassment claim. He appears to suggest that those incidents constitute discrimination because any type of aggravation constitutes failure to accommodate when the disability in question is

depression.   We do not believe, however, that the obligation to make reasonable accommodation extends to providing an aggravation-free environment.  The facts, for instance, that Mr. Cannice was frequently summoned for questioning about a sexual harassment complaint that he made, and that he was more closely monitored than his colleagues, do not, as a matter of law, amount to a failure by Norwest to accommodate his disability and thus do not give rise to a claim for damages against Norwest.

Mr. Cannice names only one type of accommodation that Norwest could have made, namely, providing him with a private, unmonitored telephone line so that he could talk to his doctor, friends, or family if he experienced a panic attack. Mr. Cannice requested such a private telephone line, but Norwest offered him instead the use of the telephones in a conference room and in his manager's office. Mr. Cannice testified that neither of these options was satisfactory because the telephones were too far from his desk and he would have difficulty reaching them during an attack.  There is no evidence, however, that the lack of a private telephone line impaired his ability to work or aggravated his disability.  He did not testify that he in fact ever suffered an attack after he requested a private telephone line or that he ever had trouble reaching a telephone.  At worst, he was made anxious by the knowledge that his own telephone was monitored and that the other telephones were some distance away.  Most important, he did not say that he would have been able to continue functioning in his job if Norwest had provided him with a private telephone line.

Mr. Cannice has identified no other accommodation that might have prevented his condition from deteriorating and would have enabled him to stay on at Norwest. He therefore failed to make a submissible case on his discrimination claim, and, accordingly, we affirm the trial court's grant of judgment as a matter of law to Norwest on that claim.

### III.

For the reasons stated, we reverse the trial court's denial of Norwest's motion for judgment as a matter of law on Mr. Cannice's harassment claim, and we affirm the trial court's grant of judgment as a matter of law to Norwest on Mr. Cannice's discrimination claim. We remand the case to the trial court for the entry of a judgment consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.