Bernard ANDERSON, Plaintiff,

v.

Bill RICHARDSON, Secretary, United States Department of Energy, Defendant.

No. A3–99–103.

United States District Court, D. North Dakota, Southeastern Division.

Jan. 10, 2001.

---

Deborah Joan Carpenter, Carpenter Offices, Bismarck, ND, for plaintiff.

David L. Peterson, U.S. Attorney's Office, Bismarck, ND, for defendant.

## *MEMORANDUM AND ORDER*

WEBB, District Judge.

### I. Introduction

Before the Court is defendant's motion for summary judgment (doc. # 13). Plaintiff has resisted the motion (doc. # 17). The matter came on for hearing at 9:00 a.m. on December 14, 2000, in Bismarck, North Dakota. At that time, the Court ruled from the bench, indicating that summary judgment was granted in part and denied in part, and taking other issues under advisement. This Order will clarify those rulings and resolve issues taken under advisement. As discussed below, defendant's motion is **DENIED** as to the retaliation claims but **GRANTED** as to all other claims.

### II. Background

Plaintiff Bernard Anderson has been employed by Western Power Administration (WPA) since March of 1985, first as a dispatcher and then as an electrician, the job he currently holds.[1] During this time, his performance ratings were favorable. In January 1995, he injured his knee on the job and received a workers' compensation award for a period of 5.7 weeks, based on a determination that he had a "two percent permanent loss of use of a lower left extremity." Anderson accepted this award without disputing these findings and returned to work.

Beginning after his injury, Anderson filed a series of complaints against WPA. Both sides seem to agree he initially filed an OSHA complaint prior to his injury, although the complaint itself has not been made available to the Court. Then, between 1996 and 1997, he filed several EEO complaints alleging, inter alia, retaliation for OSHA activities, disability discrimination based on his knee injury and a mental condition, and, after the first complaint, retaliation for having filed prior EEO complaints. The complaint which is the precipitating cause of this action is designated 97(148) and claims physical disability, mental disability, and retaliation.

Plaintiff began to have disciplinary problems at work after his injury. As would be expected, the parties vigorously disagree over the cause of these problems. It is undisputed, however, that plaintiff received a one-day suspension in March 1996, a five-day suspension in June 1996, and a ten-day suspension in March 1997, although plaintiff alleges the final suspension occurred in violation of proper procedure. It is undisputed these problems arose after Wayne Stevens became Anderson's supervisor, though the parties disagree over Stevens' role in these matters, with plaintiff claiming Stevens targeted him for poor treatment.

Though truncated, this brief review of the facts provides sufficient background to analyze the issues before the Court, though some additional facts will be mentioned during the course of the analysis. In short, these are the essential facts on which the parties agree. Of course, their interpretation of them is very different, and it is this fact that compels the Court not to grant a full summary judgment in this case.

### III. Analysis

#### A. Summary judgment standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.

---

1. As required at the summary judgment stage, the following recitation of facts is drawn from those the parties agree are undisputed or, where there is a dispute, is presented in the light most favorable to plaintiff. See generally *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

R.Civ.P. 56(c). A fact is "material" if it might affect the outcome of a case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Churchill Bus. Credit, Inc. v. Pacific Mut. Door Co.*, 49 F.3d 1334, 1336 (8th Cir.1995).

The basic inquiry summary judgment purposes is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996) (citing *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505). The Eighth Circuit has emphasized how exacting this inquiry must be in employment cases. In *Johnson v. Minnesota Historical Soc.*, the court noted "summary judgments should seldom be used in cases alleging employment discrimination." 931 F.2d 1239, 1244 (8th Cir.1991). The reason for this is

> [T]he special category in which Congress and the United States Supreme Court visualized these cases. Knowing that discrimination is difficult to prove by direct evidence, employment discrimination cases require a "simplified proof from a claimant in order to create an inference of discrimination and thereby establish a prima facie case." Summary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion. All the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the non-moving party.

*Id.* (citations omitted). Eighth Circuit courts have frequently cited this position in similar cases, making clear that an employment discrimination defendant has a high burden on summary judgment. *See, e.g., Benson v. Northwest Airlines*, 62 F.3d 1108, 1113 (8th Cir.1995).

However, even employment discrimination cases require the nonmovant to do more than merely restate earlier pleadings. See *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir .1995). Thus, mere arguments or allegations are insufficient to defeat summary judgment; the nonmoving party must advance specific facts to create a genuine issue of material fact for trial. *See, e.g., F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir.1997). This requirement is not satisfied by "mere speculation, conjecture, or fantasy" but requires sufficient probative evidence to allow a finding in its favor, assuming the evidence is established at trial. See *Wilson v. International Business Machines Corp.*, 62 F.3d 237, 241 (8th Cir.1995). Plaintiff fails to meet this burden on several claims.

**B. Plaintiff's claims**

■ Plaintiff has not divided his complaint into separate causes of action, choosing instead simply to recite facts he believes entitle him to recovery and demanding such recovery. Parsing of the complaint, however, as well as review of the summary judgment papers and oral arguments, reveals a host of potential claims plaintiff seems to be, or could be, making. For this analysis, they will be divided into ADA claims and retaliation claims.[2] The Court will also address two damages issues raised by the parties.

---

**2.** The Court notes briefly that claims that a plaintiff suffered retaliation as a result of EOC complaints are distinct from the underlying complaint; thus, one need not prove the underlying claim of discrimination to prove the retaliation claim. *See, e.g., Randel v. U.S. Dept. of Navy*, 157 F.3d 392, 395 (5th Cir. 1998).

*1. ADA claims*

This category includes several distinct theories. First, plaintiff has made a "straight" ADA claim, alleging he had several impairments entitling him to ADA protection and claiming those protections were violated. Second, he suggests he is entitled to protection because he was "regarded as" disabled. Finally, he argues the somewhat novel theory that he suffered a "hostile work environment" thanks to his disability. As set forth below, summary judgment is **GRANTED** as to all of these claims.

■ Plaintiff first claims he was discriminated against because he is actually disabled. Such claims are analyzed using the familiar McDonnell Douglas burden shifting framework. Thus, a plaintiff must make out a prima facie case that: "(1) she is disabled within the meaning of the ADA, (2) that she is qualified, either with or without reasonable accommodation, to perform the essential functions of the job at issue, and (3) that she suffered an adverse employment decision because of her disability." See *Treanor v. MCI Telecommunications Corp.*, 200 F.3d 570, 574 (8th Cir.2000). The Court concludes plaintiff fails to do so, as he cannot prove disability under the ADA.

The definition of disability under the ADA requires "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" 42 U.S.C. § 12102(2)(A); see also 29 C.F.R. § 1630.2(g)(1). Plaintiff claims three disabilities: the 2% permanent loss to his knee, a mental stress impairment, and a heart condition. Unfortunately, he did not devote any analysis in his brief or at oral argument to explaining how these physical ailments constitute a disability for purposes of the ADA. That is,

he fails to explain how they substantially limit any major life activity, appearing to assume they do so. The Court, however, rejects this assumption.

First, it is not disputed that plaintiff has permanently lost 2% use of his left knee.[3] While plaintiff stresses that the loss was a permanent one which caused restrictions on his ability to work, he does not dispute his doctor's assertion that the loss was limited to 2% of his knee function and that he has reached maximum medical improvement. The Court initially notes its skepticism that such a minor loss of function could, under any circumstances, constitute a disability. Indeed, several Eighth Circuit cases reject similar injuries as disabilities. *See, e.g., Robinson v. Neodata Services, Inc.*, 94 F.3d 499, 502 (8th Cir.1996) ("[Plaintiff's] own medical expert ... opined that [plaintiff] had only a 6% impairment rating on the right upper extremity and that this minor impairment would have little, if any, affect on her ability to perform major life activities"); *Hutchinson v. United Parcel Service*, 883 F.Supp. 379, 386, 396 (N.D.Iowa 1995) (finding "permanent impairment was only slight" when plaintiff lost 2% use of the upper extremities).

This is especially true here, as plaintiff has offered no evidence beyond the fact of impairment. Thus, the Court has no basis on which to find plaintiff's knee condition substantially limits the major life activity of working. His protestations that the condition required workplace adjustments is not enough, in itself, to find a substantial limitation. In short, plaintiff has provided no evidence of disability within the meaning of the ADA.

■ Further, it is clear in the Eighth Circuit that "the inability to perform a

**3.** The Court will assume plaintiff believes the disabilities affect his major life activity of

working, the only activity on which the Court has any information about the plaintiff.

single, particular job does not constitute a substantial limitation in the major life activity of working." *Robinson,* 94 F.3d at 501; see also *Wooten v. Farmland Foods,* 58 F.3d 382 (8th Cir.1995). Rather, plaintiff must show he is limited in performing "a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Therefore, plaintiff must show not that he is limited just in the job he holds with WPA, but in a broad range of similar jobs. Plaintiff has made no effort to do so.

■ The other two conditions require less analysis. First, plaintiff claims he has a mental stress condition. A mental condition clearly can be a disability under the ADA. See 42 U.S.C. § 12102(2)(A); see also *Cannice v. Norwest Bank Iowa NA,* 189 F.3d 723, 727 (8th Cir .1999). However, like any other, such a condition must be proven. However, as with his knee injury, plaintiff does not analyze how his mental ailment qualifies as a disability for purposes of the ADA. Further, defendant stresses plaintiff has neither sought treatment from a doctor, counselor, or psychologist nor been hospitalized for any mental condition. At oral argument, plaintiff conceded this was true. These facts severely undercut his claim of disability by virtue of a mental condition that substantially limits a major life activity.[4]

■ Finally, plaintiff claims a heart ailment based on an episode of atrial fibrillation. It is undisputed plaintiff had this episode, and the Court will assume, as plaintiff claims, that it is somehow work related. However, as defendant points out, plaintiff's own doctor emphasizes that he drank 20–22 cups of coffee the day of the incident, which likely contributed to the episode. Defendant further asserts plaintiff has not since had a heart problem or been on treatment and refers to medical testimony to this effect. Plaintiff simply denies this is true, but he offers no contradictory evidence, which is insufficient to defeat summary judgment. See *F.D.I.C.,* 106 F.3d at 263 (noting that mere allegations will not prevent summary judgment).

■ Further, there is clear case law holding that merely having a heart condition does not qualify one for automatic ADA protection; rather, one must prove substantial impairment of a major life activity. See *Weber v. Strippit, Inc.,* 186 F.3d 907, 914 (8th Cir.1999) (finding plaintiff was not disabled because he "could engage in most forms of exercise, even strenuous exercise, despite his heart condition"); *see also Berg v. Norand Corp.,* 169 F.3d 1140 (8th Cir.1999). Plaintiff has made no effort to argue, and has produced no evidence that, his heart condition substantially limits a major life activity. See *Taylor v. Nimock's Oil Co.,* 214 F.3d 957, 960–61 (8th Cir.2000) (discussing a heart condition under substantial limitation analysis). Thus, plaintiff has failed to establish a prima facie case of discrimination based on any actual disability.

Plaintiff also seeks to show he was discriminated against because he was "regarded as disabled." To prevail on such a claim, plaintiff must show that defendant regarded him as having an impairment

---

4. Plaintiff has sought to tie his mental stress disorder to Wayne Stevens, a supervisor with whom he did not get along, suggesting he could do his job before and after Stevens was his supervisor. (Pl.'s Resp. to Summ. J. at 13.) Thus, plaintiff argues his mental and heart disabilities are connected, at least in part, to Stevens. On this issue, the Court notes with interest a series of Seventh Circuit cases holding that the inability to do a particular job when working for a particular supervisor does not qualify one for protection under the ADA, as such a person is clearly capable of doing the job at issue. *See, e.g., Schneiker v. Fortis Ins. Co.,* 200 F.3d 1055, 1061 (7th Cir.2000).

that substantially limits a major life activity. See *Roberts v. Unidynamics Corp.*, 126 F.3d 1088, 1092 (8th Cir.1997). A plaintiff is so regarded "when others treat that individual as having such an impairment." *Id.* (citing *Webb v. Mercy Hospital*, 102 F.3d 958, 960 (8th Cir.1996)). Thus, "the focus is on the impairment's effect upon the attitudes of the others." *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995). In short, others must treat plaintiff as if he had a disability when, in fact, he did not have one.

There is no support in the record for the position that this occurred to Anderson. Even taking the evidence in the light most favorable to him, plaintiff simply has not pointed to any facts which would support this view. Rather, he has shown at most that he had some physical problems, which do not, as discussed above, in fact rise to the level of disabilities. Further, while he has produced some evidence that he suffered from poor treatment at work, there is simply no evidence that any of this treatment came from an erroneous view that he was disabled. Therefore, his "regarded as" ADA claim is unavailing.

Finally, plaintiff claims he was subjected to a hostile work environment due to his disability. This claim is more frequently seen in the context of sexual harassment under Title VII, a statute of which plaintiff cannot avail himself (and of which he has not tried to avail himself). However, there is some authority for finding a hostile work environment under the ADA. The Eighth Circuit, for example, has suggested such a claim could exist, but no court has yet found an appropriate case for it. *See, e.g., Cannice v. Norwest Bank Iowa N.A.*, 189 F.3d 723, 725 (8th Cir.1999); *see also Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 788 (8th Cir.1998). In each case, the Eighth Circuit found the plaintiff had clearly not proven his or her case, so the court was not required to perform an analysis of the issue. *Cannice*, 189 F.3d at 725–26 (concluding plaintiff had not shown alleged harassment was "because of" his disability); *Moritz*, 147 F.3d at 788 (concluding plaintiff could not proceed since she could not prove her prima facie case of discrimination). Other cases are similar. *See, e.g., Wallin v. Minnesota Dept. of Corrections*, 153 F.3d 681, 687 (8th Cir. 1998) (finding alleged harassment did not rise to level of severity required to maintain case).

Thus, before a court must decide whether a cause of action for ADA hostile work environment exists, plaintiff must state a case which would suffice if it did. At a minimum, this requires showing plaintiff can make his prima facie case of disability discrimination, *Moritz*, 147 F.3d at 788, plaintiff suffered harassment severe enough to alter the terms and conditions of employment, *Wallin*, 153 F.3d at 687, and the harassment occurred because of a disability, *Cannice*, 189 F.3d at 725.

The Court concludes plaintiff has shown none of these elements. He has failed to make a prima facie case under the ADA, as discussed above. Even if he had, however, the record does not show harassment pervasive enough for a hostile work environment, even taking the facts most favorably to plaintiff. Finally, though there is no reason to address causation between two nonevents, it is doubtful the record would support a finding of causation between the putative disability and the putative harassment. Thus, the Court rejects this claim. Defendant's motion for summary judgment as to the ADA claims is **GRANTED.**

*2. Retaliation claims*

▮ Plaintiff claims defendant retaliated against him for filing both OSHA and EEOC complaints. This claim is independent of the claims discussed above, requir-

ing a completely different set of proofs. As discussed below, the Court finds that plaintiff has raised a substantial issue of material fact on these claims and therefore denies summary judgment as to them.

Retaliation claims are also analyzed using a burden-shifting framework. As the Eighth Circuit explained in *Reich v. Hoy Shoe Co.*, a leading OSHA-retaliation case:

First, the plaintiff must make a prima facie case by showing [1] participation in a protected activity, [2] a subsequent adverse action by the employer, and [3] some evidence of a causal connection between the protected activity ... and the subsequent adverse action. Second, once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate an appropriate non-discriminatory reason for its action. Finally, if the employer satisfies this burden, the plaintiff must then demonstrate that the proffered reason is pretextual.

*Reich v. Hoy Shoe Company*, 32 F.3d 361, 365 (8th Cir.1994) (internal citations omitted). This same framework is employed for ADA retaliation claims. *See, e.g., Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir.1999) (discussing the structure of ADA retaliation claims).

Here, the Court finds plaintiff has met his burden to rebut summary judgment. It is undisputed that he engaged in protected activity when he filed his complaints. *Id.* There also is no doubt he suffered an adverse employment action, as he claims he was given undesirable work assignments which were contrary to his doctor's orders and which exacerbated his injuries, leading to his workplace problems and eventually to the suspensions. *See, e.g., Kim v. Nash Finch Co.*, 123 F.3d

1046, 1060 (8th Cir.1997). Finally, the Court concludes that, viewing the evidence in the light most favorable to plaintiff, he has succeeded in creating substantial issues of material fact on the issue of causation sufficient to survive summary judgment.

In short, fact questions remain on causation, defendant's intent, and other issues. Plaintiff has thus met his summary judgment burden on these claims, and defendant's motion for summary judgment is **DENIED.**[5]

### 3. Damages claims

Finally, defendant seeks to eliminate two damage elements plaintiff pleads in his complaint. First, it seeks to prevent plaintiff from recovering for a "lost foreman's position" he claims was given to another employee, arguing plaintiff never applied for the position and the claim has never been before an administrative agency. Second, it seeks to eliminate plaintiff's claim for double annual leave and double sick leave, to which he claims he is entitled because he took the days as a result of discrimination. Plaintiff has resisted these motions. On the first, he claims he was prevented from applying for the position because he was suspended when it was available, a suspension he claims was discriminatory. He also resisted the second issue at argument, but he did not address it in his brief.

The Court has little trouble disposing of the sick day and leave claims. First, to the extent the sick days and leave are tied to plaintiff's mental stress disorder, they must be barred, as the Court has already rejected plaintiff's claim on this issue. Further, as defendant notes, there is no substantiation in the record for this claim

---

**5.** However, the Court rejects plaintiff's argument, advanced at argument, that he has a claim for a hostile work environment based

on retaliation. As discussed above, he has not claimed harassment sufficient enough for such a claim.

beyond plaintiff's bare allegation. For example, it is undisputed that plaintiff did not seek medical help during these days, which undercuts his claim. In short, the record before the Court contains no basis for this claim and so defendant's motion for summary judgment as to it is **GRANTED.**

 The claim for the foreman's position is arguably stronger, but the Court concludes it too must fail. First, plaintiff denies defendant's claim that he never sought administrative review of this issue, but he offers no evidence that he has done so beyond his rejection of defendant's position. (Pl.'s Statement of Disputed Facts ¶ 2.) Further, plaintiff fails to counter defendant's argument that the issue was not timely raised, as he claims the position was lost in mid 1996 but he did not see an EEO counselor until April 28, 1997, outside the required 45 day contact period. 29 C.F.R. § 1614.105(a)(1).

Finally, plaintiff has failed to meet his burden on his failure-to-promote claim. Establishing a prima facie case for such a claim requires a plaintiff must show membership in a protected group; that he was qualified and applied for a promotion; that he was rejected; and that a similarly qualified employee, not part of a protected group, was promoted instead. *Rose–Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1110 (8th Cir.2000). It is undisputed plaintiff did not apply for the job. This might be overcome by his argument that he was prevented from doing so, but the Court need not resolve this question, since plaintiff has not addressed what the qualifications for the job were, whether he met them, or if the employee who received the job was similarly qualified and not part of a protected group. Thus, while the burden on a plaintiff is minimal, he has here not pointed to anything in the record to support his claim. *Id.* at 1110–1111. Defendant's motion is therefore **GRANTED.**

## IV. Conclusion

As described above, the Court **GRANTS** defendant's summary judgment motion as to plaintiff's ADA claims, however described. The Court **DENIES** summary judgment as the plaintiff's retaliation claims. This case will proceed on these claims alone.

**IT IS SO ORDERED.**