1999 ND 52

**Kelly OPP, Plaintiff and Appellant,**

**v.**

**SOURCE ONE MANAGEMENT, INC., and Jule Holzer, Defendants and Appellees.**

**No. 980154.**

Supreme Court of North Dakota.

March 18, 1999.

Rehearing Denied April 6, 1999.

Deborah J. Carpenter, of Carpenter Law Offices, Bismarck, for plaintiff and appellant.

Patrick J. Ward (argued) and Lawrence E. King, of Zuger Kirmis & Smith, Bismarck, for defendants and appellees.

MARING, Justice.

[¶ 1] Kelly Opp appeals from the district court's judgment granting Source One Management, Inc.'s motion for summary judgment. We affirm.

I

[¶ 2] Opp, a male, began working for Source One as a warehouse clerk in September 1992. Source One, a private corporation based in Denver, Colorado, contracts with governmental agencies to provide administrative and clerical support. Opp's duties included warehouse maintenance, equipment distribution, and operation of government vehicles to transport equipment and perform field inventories. Jule Holzer, a female, was Source One's site manager in Bismarck, and at all times relevant, was Opp's supervisor. Opp was fired on July 3, 1995, for violating government regulations and Source One policy by using a government vehicle for personal use.

[¶ 3] Opp originally filed this case in federal district court in September 1996, alleging claims under state and federal law for breach of contract, sexual discrimination and harassment, retaliatory discharge, and violations of the first amendment and 42 U.S.C. § 1983. On September 2, 1997, the federal court dismissed with prejudice Opp's Title VII claims because they were not timely filed. Guided by a stipulation between the parties, the court also dismissed with prejudice Opp's breach of contract, first amendment and 42 U.S.C. § 1983 claims, but permitted Opp to file an amended complaint alleging discrimination claims under the North Dakota Human Rights Act. On September 4, 1997, the court declined to exercise supplemental jurisdiction over Opp's state claims and dismissed them without prejudice. Opp did not appeal any of the federal district court's orders, and instead commenced this action in state court.

[¶ 4] Opp filed a summons and complaint in state court on October 24, 1997, alleging sexual harassment and retaliatory discharge claims under the North Dakota Human Rights Act and breach of employment contract. In lieu of an answer, Source One filed a motion for summary judgment on November 13, 1997. Opp filed a response opposing the summary judgment motion on December 16, 1997. On February 2, 1998, after a hearing on the matter, the district court issued a memorandum opinion granting Source One's summary judgment motion on the sexual harassment, retaliatory discharge, and

breach of contract claims. After judgment was entered, Opp timely filed his notice of appeal.

[¶ 5] To support his sexual harassment claim, Opp alleges a number of cards, notes, e-mails, and social invitations received from Holzer over the nearly three year period of his employment contained sexual innuendo and impliedly sought a sexual relationship with him. For instance, in 1993, Holzer sent Opp a birthday card, the cover of which has a painting of a pair of cowboy boots, and states, "Wouldn't it be wonderful if we could be like a pair of old boots. The worse we look, the better we feel. Happy Birthday and many more." Opp believes the card is sexual in nature because the pair of boots imply Holzer wanted the two of them to be a couple. In 1994, Holzer sent Opp another birthday card stating, "Go ahead. Make a wish. Happy Birthday." Holzer wrote on the card, "Have a good one. Jule." Opp believes "make a wish" also implied Holzer wanted a relationship with him. For Opp's birthday in 1994, Holzer also sent him an e-mail reciting the words of the Happy Birthday song. Opp believes the message was "flirtatious and inappropriate." Opp also alleges while in Fargo for company meetings, Holzer asked him to go drinking and dancing. Opp refused. Later, when Opp was to take another business trip to Fargo, Holzer commented she should go along so they could go dancing together, since they had not been able to before.

[¶ 6] Opp also alleges a series of notes, cards and e-mails from Holzer show Holzer "flirted" with him. Specifically, Holzer sent Opp: (1) a note stating "Have a nice, great weekend—rest up and start taking care of yourself—Jule," (2) an e-mail stating "hope you are feeling better," (3) another e-mail saying "Have a nice time off—Jule," in reference to a day off Opp was to have, (4) a note on the envelope of one of his paychecks, saying "Have a good Memorial Day weekend," and (5) a Christmas card on which she wrote, "Keep up the good work. Wishing you and your family a happy holiday season. JH." Also, on a number of occasions Holzer and Opp had lunch meetings in which business was initially discussed. During these lunches, Holzer would turn the conversation to Opp's personal life, such as how his family was doing or what his vacation plans were. Opp argues this "delving into his personal life" was "flirtatious."

[¶ 7] Opp complains Holzer inappropriately discussed off-color jokes and sexual topics at work. Opp alleges Holzer: (1) repeated a joke about John Wayne Bobbit in the company of other Source One employees, (2) recounted for Opp a recent camping trip taken with co-workers where the subject of glow-in-the-dark condoms was discussed, (3) asked Opp if he had seen a recent episode of "Dave's World," a popular television show, where the plot line for the particular show revolved around kids blowing up condoms, and (4) told Opp he would have enjoyed seeing the two women she had seen walking down the street topless during a trip to Denver.

[¶ 8] Finally, Opp alleges Holzer physically harassed him. On one occasion Holzer reached across Opp's desk to use his phone and in the process brushed her hip against his body. Another time, while seated side by side at Opp's desk, Holzer pushed her chair closer to Opp's and in the process brushed her arm against his. While walking side by side down a hallway at work, Opp claims Holzer continued to brush up against him while they walked. On another occasion, while Opp was seated at his desk, Holzer stood over him and rubbed his back for "between 2–10 seconds." On two other occasions, after lengthy meetings, Holzer allegedly hugged Opp.

[¶ 9] Source One had its own complaints. Over a sixteen-month period beginning in January 1994, Opp was issued two formal written warnings concerning his inappropriate behavior in the workplace. On January 18, 1994, Holzer and Les Tomac, Source One's Group Manager in Denver, issued Opp a "final written warning" documenting concerns about his conduct. The formal warning cited Opp for sexually harassing behavior towards Holzer, an unprofessional work attitude, and personal use of government resources in violation of Source One policy and governmental regulation. In a written response to the warning, Opp denied most of

the conduct for which he was cited, including the sexual harassment allegation. Notably Opp did not complain about any sexually harassing behavior on Holzer's part either in his written response or during a meeting he had with Tomac concerning the written warning. Opp did tell Tomac he did not like Holzer "prying into his personal life." On May 3, 1995, Opp was given a second "final written warning," again being cited for "inappropriate behavior addressing the same type of problems that have previously occurred." Opp apparently did not acknowledge or respond to the second warning. He was fired on July 3, 1995, for again violating government regulations and Source One policy by using a government vehicle for personal use.

## II

■ [¶ 10] As a preliminary matter, we must address Opp's argument that the district court improvidently granted summary judgment because Source One did not respond to his complaint with a proper responsive pleading. Source One argues responding to Opp's complaint with a summary judgment motion was proper because N.D.R.Civ.P. 12 and 56 combine to allow a summary judgment motion to be brought in lieu of a responsive pleading. Under N.D.R.Civ.P 12(b)(5) any defendant to a complaint, counterclaim, or cross-claim may move to dismiss for "failure to state a claim upon which relief can be granted." When matters outside the pleadings are presented to the court in conjunction with such a motion, "the motion must be treated as one for summary judgment and disposed of as provided in Rule 56." N.D.R.Civ.P. 12(b); *Livingood v. Meece*, 477 N.W.2d 183, 187 (N.D. 1991). Clearly, a motion under N.D.R.Civ.P. 12(b)(5) can be filed in lieu of an answer. Source One initially filed its summary judgment motion under N.D.R.Civ.P. 56, however, and not as a Rule 12(b) motion. Thus, we must look to N.D.R.Civ.P. 56 to determine whether a summary judgment motion is a proper responsive pleading.

[¶ 11] N.D.R.Civ.P 56(b) specifically provides a defendant "may move, at any time, with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." While N.D.R.Civ.P. 56(a) requires plaintiffs to wait 20 days from the commencement of the action to move for summary judgment, N.D.R.Civ.P. 56(b) clearly allows defendants to move at any time. "The different rules for plaintiffs and defendants attempt to ensure that the target of a summary judgment motion is familiar with the dispute at issue in the lawsuit for at least a modest amount of time." 11 *Moore's Federal Practice*, § 56.10[1] (3d ed.1998) (discussing Fed.R.Civ.P. 56). Since plaintiffs have an inherent familiarity with their lawsuit from the onset, "there is less reason for concern about unfairness if defendants immediately move for summary judgment against the plaintiff's claim." *Id.* Opp nevertheless argues he was prejudiced by the timing of Source One's summary judgment motion because he was precluded from pursuing adequate discovery. Opp fails to acknowledge the extensive discovery which took place in this case at the federal level, and nothing prevented him from invoking N.D.R.Civ.P. 56(f) to defer a decision on the motion to allow further discovery. Under these circumstances, we conclude Source One's motion for summary judgment was not an improper response to Opp's complaint.

## III

■ [¶ 12] The North Dakota Human Rights Act makes it unlawful for an employer to discriminate on the basis of, among other things, an employee's sex. *See* N.D.C.C. § 14–02.4–01. Title VII of the Civil Rights Act of 1964 is the federal law with obvious parallels to our state discrimination statute.[1] While we have yet to address a sexual harassment claim under the North Dakota Human Rights Act, we will look to federal interpretations of Title VII for guidance when it is "helpful and sensible to do so[.]" *Schweigert v. Provident Life Ins. Co.*, 503 N.W.2d 225, 227 (N.D.1993).

---

1. Title VII similarly makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1).

 [¶ 13] It is now well settled sexual harassment is a form of sex discrimination under Title VII.[2] *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 66–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). We similarly conclude sexual harassment is an actionable form of sex discrimination under the North Dakota Human Rights Act.

 [¶ 14] The plaintiff in a discrimination action under either Title VII or the North Dakota Human Rights Act must carry the initial burden of establishing a prima facie case. *Schuhmacher v. North Dakota Hosp. Ass'n,* 528 N.W.2d 374, 378 (N.D.1995); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A prima facie case of a sexually hostile work environment claim is established by proving five elements: (1) the employee belongs to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the sexual harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. *Phillips v. Taco Bell Corp.,* 156 F.3d 884, 888 n. 4 (8th Cir.1998); *Montandon v. Farmland Indust.,* 116 F.3d 355, 358 (8th Cir.1997). The plaintiff must prove all the elements of a prima facie case by a preponderance of the evidence. *Miller v. MedCenter One,* 1997 ND 231, ¶ 11, 571 N.W.2d 358 (quoting *Schweigert,* 503 N.W.2d at 227). If the plaintiff's "evidence is insufficient to establish an essential element of [the] sexual harassment claim, summary judgment in favor of [the defendant is] mandated." *Zirpel v. Toshiba America Info. Syst.,* 111 F.3d 80, 81 (8th Cir.1997) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

 [¶ 15] Summary judgment is a procedural device for properly disposing of a lawsuit without trial if, after viewing evidence in a light most favorable to the non-moving party, there "are no genuine issues of material fact or conflicting inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law." *Hummel v. Mid Dakota Clinic P.C.,* 526 N.W.2d 704, 707 (N.D.1995) (upholding summary judgment where plaintiff failed to establish prima facie elements of age discrimination claim under the North Dakota Human Rights Act). If the moving party meets its initial burden of showing the absence of a genuine issue of material fact, the non-moving party may not rely on mere allegations, but must present competent evidence by affidavit or other comparable means creating a material factual dispute. *Miller,* 1997 ND 231, ¶ 15, 571 N.W.2d 358. When no such evidence is presented, it is presumed not to exist. *Id.*

 [¶ 16] At the summary judgment stage, the non-moving party gets the benefit of all favorable inferences, and thus neither we nor the trial court are allowed to weigh evidence, determine credibility, or attempt to discern the truth of the matter. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The federal courts generally recognize summary judgment is seldom appropriate in the employment discrimination context where factual inferences are often the basis of the claim. *Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1156 (8th Cir.1999); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir.1997). In a similar vein, we have long held issues dealing with negligence or the reasonable person standard are generally inappropriate for summary judgment. *Hougum v. Valley Mem. Homes,* 1998 ND 24, ¶ 24, 574 N.W.2d 812 [reasonable person standard]; *Vandal v. Peavey Co.,* 523 N.W.2d 266, 267 (N.D.1994) [negligence]. Such issues become appropriate for summary judgment, however, when reasonable minds can draw but one conclu-

---

2. Initially, sex discrimination cases under Title VII dealt only with traditional areas of disparate treatment such as hiring practices, wage issues, disciplinary actions, or other tangible benefits. *See, e.g., Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In the early 1980's many federal courts began recognizing sexual harassment as actionable under Title VII. *See, e.g., Henson v. City of Dundee,* 682 F.2d 897, 902 (11th Cir.1982). In *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court held sexual harassment violates Title VII.

sion from the evidence. *Hougum*, at ¶ 24; *Larson v. Kubisiak*, 1997 ND 22, ¶ 7, 558 N.W.2d 852. We hold, as a matter of law, reasonable persons could only conclude the evidence Opp presents does not rise to the level of actionable sexual harassment under the North Dakota Human Rights Act.

[¶ 17] In granting Source One's summary judgment motion, the district court concluded Opp failed to establish three of the prima facie elements of his hostile work environment claim. While the district court reviewed all of the elements of a prima facie case, we need only review the fourth element on appeal.

[¶ 18] Under the fourth element of a hostile work environment claim, an employee must prove the conduct complained of is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399 (citations omitted). To be actionable, a plaintiff must show his or her work environment is both objectively and subjectively offensive, essentially one that a reasonable person would find hostile or abusive. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (stating "[a] sexually objectionable environment must be ... one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so"). Whether the conduct complained of is "sufficiently severe or pervasive to alter the conditions of employment" is determined by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citing *Harris v. Forklift Syst., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "Whether an environment is hostile or abusive cannot be determined by a 'mathematically precise test' ... but conduct that is merely offensive is insufficient to implicate Title VII." *Quick*, 90 F.3d at 1378 (citing *Harris*, 510 U.S. at 21–23, 114 S.Ct. 367).

[¶ 19] The most salient feature of the alleged harassment in this case is its lack of sufficient severity or pervasiveness. The Supreme Court recently reminded us that Title VII is not a general civility code, and "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" will generally not rise to the level of actionable harassment. *Faragher*, 118 S.Ct. at 2284 (citations omitted). The Supreme Court also cautioned "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 2283 (internal citations omitted). We similarly conclude isolated incidents of simple teasing, offhand comments, gender-related jokes, or vulgar language lack sufficient severity to alter the conditions of a victim's employment and create a hostile work environment under the North Dakota Human Rights Act.

[¶ 20] Opp argues Holzer's "delving into his personal life" was "flirtatious." As the district court found, and his deposition testimony clearly shows, however, Opp never informed Holzer her inquiries about his personal life made him uncomfortable, and there is no evidence the inquiries were gender-based. Opp also argues the various cards and notes from Holzer contributed to a sexually hostile environment. Yet in making his argument Opp is forced to rely on subjective inferences drawn from conduct that is either facially non-sexual or ambiguous. Although Opp may have subjectively viewed the birthday and Christmas cards and various notes wishing him well as flirtatious, we find as a matter of law a reasonable jury could not find that a reasonable person would have viewed the notes and cards, even if subtly flirtatious, as affecting a condition or term of employment.

[¶ 21] Opp argues the various incidents of physical contact are blatant examples of sexual harassment. Over the course of nearly three years of employment, Opp points to three occasions where Holzer "bumped" into him in the office setting. Two other times Holzer hugged Opp after discussing personal issues with him. Holzer also allegedly rubbed Opp's back for a period of "2 to 10 seconds." We fail to see how reasonable

persons would view these temporally sporadic incidents of non-sexual, physical contact as affecting a term or condition of his employment. Opp fails to demonstrate even the slightest pattern of any harassing conduct. *See Faragher,* 118 S.Ct. at 2283 (stating "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' "); *Kotcher v. Rosa & Sullivan Appliance Ctr. Inc.,* 957 F.2d 59, 62 (2d Cir.1992) (stating "incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief"). The two occasions where Holzer invited Opp to go drinking and dancing were, likewise, isolated incidents, of which Opp never complained to Holzer or anyone.

[¶ 22] We are reminded by the Supreme Court that Title VII (and for that matter the North Dakota Human Rights Act) "does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." *Oncale v. Sundowner Offshore Serv. Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1002–03, 140 L.Ed.2d 201 (1998); *see also Faragher,* 118 S.Ct. at 2284 (stating "[w]e have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment"). While Holzer's conduct at times may have been inappropriate or unprofessional, after consideration of the entire record and affording Opp all favorable inferences on the evidence which he presents, we conclude as a matter of law Holzer's conduct does not amount to actionable harassment under the North Dakota Human Rights Act.

### IV

[¶ 23] Opp also argues the district court erred in granting summary judgment in favor of Source One on his retaliatory discharge claim. To establish a prima facie case of retaliatory discharge, a plaintiff must introduce probative evidence that he or she (1) opposed an unlawful employment practice, (2) the employer took adverse employment action, and (3) a causal connection exists between the adverse employment action and the protected activity. *Flannery v. Trans World Airlines, Inc.,* 160 F.3d 425, 428 (8th Cir.1998); *Montandon,* 116 F.3d at 359. We agree with the district court's determination Opp failed to establish a prima facie case of retaliatory discharge.

[¶ 24] There is no evidence in the record Opp opposed an unlawful employment practice. The only time during Opp's employment with Source One that he complained about Holzer's conduct in any manner was in a meeting with Les Tomac in February 1994. In that meeting, Opp told Tomac he did not want Holzer "prying into his private life." Tomac responded by telling Opp to be up front with Holzer and let her know he did not welcome her interest in his personal life. Opp admitted in his deposition testimony that he made no allegation of any sexually harassing behavior on Holzer's part. Even assuming Holzer's ongoing interest in Opp's personal life was unprofessional, it was not unlawful under the North Dakota Human Rights Act. We recognize an employee may establish he or she engaged in a protected activity even without prevailing on the underlying Title VII claim. *Montandon,* 116 F.3d at 359. The employee must, however, "have a reasonable belief that his activity was protected by Title VII." *Id.* Opp's communication with Tomac in February 1994, was a result of a disciplinary action taken against him by Holzer. In Holzer's disciplinary report, she wrote Opp up for, among other things, sexually harassing her. Although Opp denied the allegation, nowhere in his seven page response does Opp mention any concern about Holzer's alleged sexually harassing conduct toward him. We conclude Opp failed to establish the first element of a prima facie retaliatory discharge claim. *Id.*

### V

[¶ 25] Opp's remaining arguments concern the district court's grant of summary judgment on his breach of contract claim and award of statutory costs and fees. In Opp's initial complaint filed in federal district court in September 1996, he alleged breach of em-

ployment contract. Guided by a stipulation between the parties, the federal district court dismissed the breach of contract claim with prejudice. Opp did not appeal the court's order. The complaint filed in the federal action asserts the same breach of contract claim asserted in this case. We have said "[a]n order dismissing a case 'with prejudice' is a final disposition of the controversy and, unless reserved, is a bar to any future claim." *Williams v. State*, 405 N.W.2d 615, 622 (N.D. 1987); *see also Daewoo Elec. Corp. of America v. Western Auto Supply Co.*, 975 F.2d 474, 478 (8th Cir.1992) (holding a "[d]ismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and bars further action between the parties") (citation omitted). Summary judgment on Opp's breach of contract claim was appropriate because the federal district court's order dismissing Opp's contract claim was a final disposition of the matter.

[¶ 26] Opp also argues the district court erred in awarding Source One statutory costs. On March 30, 1998, the district court entered its order for judgment awarding Source One summary judgment along with statutory costs. In accordance with N.D.R.Civ.P. 54(e), Source One filed a verified statement of taxable costs with the clerk of district court on April 17, 1998. After the clerk allowed the costs and inserted them in the judgment, Source One served Opp notice of entry of judgment, including a copy of the verified statement of costs, on April 23, 1998. Under N.D.R.Civ.P. 54(e), Opp had seven days to object to the allowance of costs. Opp did not secure a review of the taxed costs within seven days, and instead filed his appeal to this Court on May 6, 1998. Because Opp failed to timely object to the clerk's taxation of costs below, he is precluded from now seeking review of those costs on appeal. *See* N.D.R.Civ.P. 54(e); *see also Neuner v. Ballantyne*, 336 N.W.2d 342, 345 (N.D.1983) (holding a party's "failure to secure a review in the district court of the clerk's taxation of costs and disbursements bars him from seeking a review of the taxation of costs and disbursements in this court"). We therefore affirm the award of statutory costs in the amount of $ 2,056.94.

[¶ 27] The judgment of the district court is therefore affirmed.

[¶ 28] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and KAPSNER, JJ., concur.

