2003 ND 44

**Peggy A. KOEHLER, Plaintiff and Appellant.**

v.

**COUNTY OF GRAND FORKS, Grand Forks County Board of Commissioners and Gary Malm, Arvin Kvasager, William "Spud" Murphy, Constance Triplett and Robert Wood, individually, and Arlene Lucke and Mary Ann Gunderson, jointly and severally, Defendants and Appellees.**

No. 20020188.

Supreme Court of North Dakota.

March 26, 2003.

Timothy P. Hill, Hill Law Office, Fargo, ND, for plaintiff and appellant.

Margaret Moore Jackson, Pearson Christensen, Grand Forks, ND, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Peggy Koehler appealed from a summary judgment dismissing her claims against the County of Grand Forks, the Board of County Commissioners, Arlene Lucke, and Mary Ann Gunderson. We affirm, concluding Koehler failed to raise a genuine issue of material fact precluding summary judgment.

I

[¶ 2] Koehler began working in the office of the Grand Forks County Register of Deeds in February 1993. At that time Lylah Sollom was the Register of Deeds and Mary Ann Gunderson was the First Deputy. In 1995, Gunderson was elected Register of Deeds and the Second Deputy, Arlene Lucke, became First Deputy. When Gunderson retired in 1999, Lucke was elected Register of Deeds.

[¶ 3] In May 1998, Koehler suffered a heart attack and was on medical leave until October 1, 1998, when she returned to work on a part-time basis. After her heart attack, Koehler was restricted from lifting more than ten pounds and was diagnosed with congestive heart failure. She asserts she is now easily fatigued, has difficulty climbing and descending stairs, is unable to walk more than a short distance, has breathing problems, and has memory lapses.

[¶ 4] Koehler claims she was subjected to harassment and unfair treatment by Gunderson and Lucke throughout her employment in the Register's office. Koehler alleges her workstation was placed at the rear of the office; she received less comfortable office furniture; she received a warning for insubordination; she was unable to take vacation time when she wanted; she was not invited to office social gatherings; she was not promoted to a First or Second Deputy position; an alarm clock was placed near her desk to signal breaks; Gunderson and Lucke followed her to the bathroom; and Gunderson and Lucke telephoned her and her doctor while she was on medical leave.

[¶ 5] In June 1999 Koehler resigned her position in the Register's office and accepted another job with the County in the Veterans Services office. Koehler had been earning $1,811 per month at the Register's office. Her new position paid $1,843 per month.

[¶ 6] Koehler brought this action against the County, the Board of County Commissioners, Lucke, and Gunderson, alleging disability discrimination, tortious interference with contract, and negligent supervision. The district court granted the defendants' motion for summary judgment, concluding Koehler had failed to demonstrate a genuine issue of material fact on an essential element of each of her claims. Koehler appealed from the judgment dismissing her claims.[1]

II

[¶ 7] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for promptly and expeditiously disposing of an action without a trial if either party is entitled to judgment as a matter of law

---

1. Koehler actually appealed from the order for judgment. Although that order is not appealable, an attempted appeal from an order for judgment will be treated as an appeal from a subsequently entered consistent judgment, if one exists. *Schuck v. Montefiore Pub.* *Sch. Dist. No. 1*, 2001 ND 93, ¶ 1 n. 1, 626 N.W.2d 698. We therefore treat this as an appeal from the judgment dismissing her claims. *See DeCoteau v. Nodak Mut. Ins. Co.*, 2001 ND 182, ¶ 1 n. 1, 636 N.W.2d 432; *Schuck*, at ¶ 1 n. 1.

and no dispute exists as to either the material facts or the reasonable inferences to be drawn from undisputed facts, or resolving the factual disputes will not alter the result. *Hilton v. North Dakota Educ. Ass'n*, 2002 ND 209, ¶ 23, 655 N.W.2d 60. The party moving for summary judgment bears the burden of establishing there is no genuine issue of material fact and, under applicable principles of substantive law, the party is entitled to judgment as a matter of law. *Moen v. Thomas*, 2001 ND 110, ¶ 10, 628 N.W.2d 325. In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Id.*

[¶ 8] We have outlined the duty of a party opposing a motion for summary judgment:

> Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.
>
> In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

*Anderson v. Meyer Broad. Co.*, 2001 ND 125, ¶ 14, 630 N.W.2d 46 (quoting *Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D.1991)).

■■■ [¶ 9] Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute on an essential element of her claim and on which she will bear the burden of proof at trial. *Hilton*, 2002 ND 209, ¶ 23, 655 N.W.2d 60. When no pertinent evidence on an essential element is presented to the trial court in resistance to a motion for summary judgment, it is presumed no such evidence exists. *Mr. G's Turtle Mountain Lodge, Inc. v. Roland Township*, 2002 ND 140, ¶ 23, 651 N.W.2d 625.

■■ [¶ 10] Whether the trial court properly granted summary judgment is a question of law which we review de novo on the entire record. *Wahl v. Country Mut. Ins. Co.*, 2002 ND 42, ¶ 6, 640 N.W.2d 689.

### III

[¶ 11] Koehler argues the district court erred in dismissing her disability discrimination claim under the North Dakota Human Rights Act, N.D.C.C. ch. 14–02.4.

[¶ 12] The Human Rights Act outlines exceptions to the employment-at-will doctrine. *Anderson*, 2001 ND 125, ¶ 17, 630 N.W.2d 46; *Hougum v. Valley Mem'l Homes*, 1998 ND 24, ¶ 35, 574 N.W.2d 812. The Act's purpose is to prevent and eliminate discrimination in employment relations, and it prohibits an employer from taking certain adverse employment actions on the basis of, among other things, physical disability. *See* N.D.C.C. §§ 14–02.4–01, 14–02.4–03; *Anderson*, at ¶ 17. The

Act prohibits an employer from according adverse or unequal treatment to an employee with respect to promotions because of a physical disability. N.D.C.C. § 14–02.4–03. An employee who has been subjected to discrimination in violation of the Act may bring an action for damages. N.D.C.C. § 14–02.4–19. We have previously indicated that, when considering claims under the Act, we will look to federal interpretations of corresponding federal antidiscrimination statutes for guidance when it is "helpful and sensible to do so." *Opp v. Source One Mgmt., Inc.,* 1999 ND 52, ¶ 12, 591 N.W.2d 101 (quoting *Schweigert v. Provident Life Ins. Co.,* 503 N.W.2d 225, 227 (N.D.1993)).

[¶ 13] The plaintiff in a discrimination action under the Act bears the initial burden of establishing a prima facie case. *Anderson,* 2001 ND 125, ¶ 18, 630 N.W.2d 46; *Opp,* 1999 ND 52, ¶ 14, 591 N.W.2d 101. To establish a prima facie case of discrimination under the Act, the plaintiff must prove: (1) she was a member of a protected class under the Act; (2) she was satisfactorily performing the duties of her position; (3) she suffered an adverse employment decision; and (4) others not in the protected class were treated more favorably. *Anderson,* at ¶ 18.

### A

[¶ 14] Koehler claims she was discriminated against on the basis of her disability because she was passed over for promotion to First or Second Deputy in the Register's office. The United States Court of Appeals for the Eighth Circuit has delineated the essential elements of a failure-to-promote case:

> To establish a prima facie case in a failure-to-promote case, a plaintiff must show: (1) that she was a member of a protected group; (2) that she was qualified and applied for a promotion to an

available position; (3) that she was rejected; and (4) that a similarly qualified employee, not part of a protected group, was promoted instead.

*Rose–Maston v. NME Hosps., Inc.,* 133 F.3d 1104, 1109 (8th Cir.1998).

[¶ 15] Koehler has failed to meet her burden of drawing our attention to evidence in the record raising a genuine issue of material fact on each element of a prima facie case. Rather, Koehler makes only vague, conclusory, unsupported assertions that she was passed over for a promotion because of her alleged disability. The only evidence she cites to support her assertion that "[e]ven though [she] was the most senior ... employee she was time and again overlooked for promotion to second or first deputy" was the following exchange from her deposition:

> Q.  What promotion do you now think you should have received?
>
> A.  Well, I think that I was, should have been moved up to the next grade when the last person, when the person left that I was in line for.
>
> Q.  And do you know which person you're talking about?
>
> A.  I don't know if it was Nancy or who it was or—it was before Nancy. It was before Nancy. Before Nancy that worked there, Nancy Driscoll, before, somebody that left before her.

[¶ 16] We have previously clarified that, in opposing a motion for summary judgment, a plaintiff in a failure-to-promote case must present evidence that she was a member of the protected class and the person promoted was not a member of the protected class. *Anderson,* 2001 ND 125, ¶ 9, 630 N.W.2d 46. In this case, Koehler has not identified the person who received the promotion she now complains about, let alone whether that person was not a member of the protected class. Fur-

thermore, it is unclear whether the challenged promotion occurred before or after Koehler allegedly became disabled. A failure to promote violates the Act only if it was causally related to the physical disability. *See* N.D.C.C. § 14–02.4–03.

[¶ 17] In addition, Koehler concedes she never applied for any promotion and did not otherwise indicate to her supervisors she was interested in a promotion to First or Second Deputy. To establish a prima facie case for failure to promote, the plaintiff must ordinarily show she applied for the position at issue, or made every reasonable attempt to convey her interest in the position to the employer. *See, e.g., Lockridge v. Board of Trs. of Univ. of Arkansas,* 315 F.3d 1005, 1010–11 (8th Cir.2003); *Garcia v. Pueblo Country Club,* 299 F.3d 1233, 1238 (10th Cir.2002); *Anderson v. Richardson,* 145 F.Supp.2d 1131, 1139 (D.N.D.2001).

[¶ 18] We conclude Koehler failed to present evidence creating a genuine issue of material fact on essential elements of her failure-to-promote claim.

B

[¶ 19] Koehler also raises a claim of hostile environment discrimination based upon physical disability, alleging Lucke and Gunderson engaged in harassing and demeaning conduct toward her. This Court has not previously recognized a claim for hostile environment discrimination based upon a physical disability under the Human Rights Act.

[¶ 20] We find it unnecessary to decide whether such a cause of action exists under the Act because, assuming it does, Koehler has failed to draw our attention to evidence in the record raising genuine issues of material fact on essential elements of the claim. To establish a prima facie case of hostile environment dis-

crimination under the Act a plaintiff would have to prove: (1) the employee belongs to a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. *See Opp,* 1999 ND 52, ¶ 14, 591 N.W.2d 101.

[¶ 21] Koehler has failed to draw our attention to any evidence in the record showing the alleged harassment was based on, or "because of," her disability. *See* N.D.C.C. § 14–02.4–03. Koehler argues she was continually subjected to harassing and demeaning conduct by Lucke and Gunderson throughout her term of employment with the Register's office. While she argues on appeal that the harassment became more vigorous after her heart attack and medical leave, she cites to no evidence in the record which supports that conclusory and vague assertion. In fact, most of the specific incidents of harassment which Koehler relies on occurred *before* her 1998 heart attack, and before she could be considered disabled under the Act.

[¶ 22] It is clear there was a long-standing personality conflict between Koehler and Lucke and Gunderson. However, as noted by the United States Court of Appeals for the Seventh Circuit in a similar case under the Americans with Disabilities Act, "[a] personality conflict doesn't ripen into an ADA claim simply because one of the parties has a disability." *Uhl v. Zalk Josephs Fabricators, Inc.,* 121 F.3d 1133, 1137 (7th Cir.1997). In order to prevail on a hostile work environment claim, the plaintiff must show the harassment occurred "because of" her disability. *Cannice v. Norwest Bank Iowa N.A.,* 189 F.3d 723, 726 (8th Cir.1999); *see* N.D.C.C.

§ 14–02.4–03. We have noted antidiscrimination statutes cannot be "a general civility code, and 'ordinary tribulations of the workplace, such as the sporadic use of abusive language ... and occasional teasing' will generally not rise to the level of actionable harassment." *Opp*, 1999 ND 52, ¶ 19, 591 N.W.2d 101 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)); *see also Cannice*, at 726. Insensitivity alone does not constitute harassment. *Cannice*, at 726.

[¶ 23] The record in this case shows any alleged harassing conduct toward Koehler began before her alleged disability. Koehler has not drawn our attention to evidence showing the intensity or tenor of the alleged harassment worsened after her disability. An ongoing personality conflict does not transform into an actionable disability claim merely because one party becomes disabled. *See Uhl*, 121 F.3d at 1137. Accordingly, because Koehler was required to demonstrate the alleged harassment was based on or because of her disability, we conclude Koehler failed to present evidence raising a genuine issue of material fact on an essential element of her hostile environment claim.

## IV

[¶ 24] Koehler argues the district court erred in dismissing her claim against Lucke and Gunderson for tortious interference with contract.

[¶ 25] Tortious interference with contract ordinarily arises when the defendant intentionally induces a third party to breach its contract with the plaintiff. *See* 45 Am.Jur.2d *Interference* § 6 (1999); 86 C.J.S. *Torts* § 59 (1997). In this case, however, Koehler argues she should be entitled to damages because Lucke and Gunderson's alleged harassing conduct caused *her* to terminate her employment in the Register's office and transfer to another department. Although Koehler cites no supporting authority for this novel theory, we note Restatement (Second) of Torts § 766A recognizes a cause of action for intentionally interfering with another's performance of his own contract:

> § 766A. Intentional Interference with Another's Performance of His Own Contract
>
> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

Liability under § 766A has been questioned, however, and has not been universally accepted. *See* 2 Dan B. Dobbs, Law of Torts § 448 (2001); *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 659–63 (3d Cir.1993); *Price v. Sorrell*, 784 P.2d 614, 615–16 (Wyo.1989).

[¶ 26] Even assuming we would adopt § 766A and apply it in a case such as this, where the plaintiff was an at-will employee who transferred to another department with the same employer due to harassment from co-workers, Koehler has failed to raise a genuine issue of material fact on an essential element of this claim. Under § 766A, a plaintiff may only recover pecuniary loss resulting from the interference with contract. Koehler has failed to demonstrate any pecuniary loss caused by the "induced breach" of her employment contract with the County. The record demonstrates Koehler transferred to another County department at an increase in pay. Koehler failed to raise a genuine issue of material fact on an essential element of her tortious interference with contract

claim, and summary judgment was therefore appropriate.

## V

[¶ 27] Koehler argues the district court erred in dismissing her claims against the County and the County Commissioners for negligent supervision.

[¶ 28] In addition to vicarious liability for an employee's conduct, an employer may be directly liable for the employer's own acts in negligently supervising an employee. *Nelson v. Gillette*, 1997 ND 205, ¶ 39, 571 N.W.2d 332. A claim for negligent supervision may arise when an employer fails to exercise ordinary care in supervising the employment relationship to prevent the foreseeable misconduct of an employee from causing harm to other employees or third persons. *Id.* Because the claim is based on negligence principles, the plaintiff has the burden of demonstrating a duty, breach of that duty, causation, and damages. *Id.*

[¶ 29] Koehler's negligent supervision claim is based on her assertion she talked to the County's Human Resource Manager, Ed Nierode, about her problems at work and he failed to investigate the matter or take other appropriate action. The district court concluded Koehler had failed to draw its attention to any evidence of damages from the County's alleged negligent supervision and accordingly dismissed the claims.

[¶ 30] Damages are an essential element of a negligent supervision claim and, as the party opposing summary judgment, Koehler was required to draw to the attention of the district court evidence raising a genuine issue of material fact on damages. Koehler failed to address damages in her brief opposing summary judgment in the district court. In her appellate brief, Koehler now argues the damages element is satisfied by evidence she was overlooked for promotions to First or Second Deputy.

[¶ 31] As previously noted, Koehler concedes she never applied for any promotion and she never otherwise indicated to her supervisors she was interested in a promotion to First or Second Deputy. When asked in her deposition what promotion she felt she should have received, she failed to identify a specific instance or the person who received the promotion in question. Nor is there any evidence Koehler told Nierode she felt she had been improperly passed over for a promotion.

[¶ 32] Under these circumstances, we conclude the district court did not err in concluding Koehler had failed to raise a genuine issue of material fact on damages. Summary judgment dismissal of the negligent supervision claims was therefore appropriate.

## VI

[¶ 33] We have considered the remaining issues raised by Koehler and find them to be without merit. The summary judgment dismissing Koehler's claims is affirmed.

[¶ 34] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.