# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1535

_____

Colleen M. Auer

*Plaintiff - Appellant*

v.

City of Minot

*Defendant - Appellee*

_____

No. 17-1943

_____

Colleen M. Auer

*Plaintiff - Appellant*

v.

City of Minot

*Defendant - Appellee*

_____

Appeals from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: April 9, 2018
Filed: July 19, 2018

_____

Before COLLOTON, SHEPHERD, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

This is the second of what will be at least three decisions from this court arising out of Colleen Auer's one-month stint as city attorney for Minot, North Dakota. *See Auer v. Trans Union, LLC*, 834 F.3d 933 (8th Cir. 2016); *Auer v. CBCInnovis, Inc.*, No. 17-2413 (submitted Apr. 9, 2018). In this installment, Auer accuses the city of firing her for reporting harassment and discrimination. She also claims the city retaliated against her for speaking out at a city-council meeting and unfairly besmirched her professional reputation. Because we conclude Auer's harassment allegations were unprotected and her remaining claims are meritless, we affirm the district court's[1] grant of summary judgment to the city.

I.

About three weeks into her one-year probationary term as city attorney, Auer sent a "Notice and Demand" to the president of the city council, the interim city manager, and the city's human-resources director. In the notice, Auer accused the interim city manager, Cindy Hemphill, of "unlawful harassment based on sex." Auer claimed Hemphill had made impossible demands on certain aspects of her work, prevented her from performing other key duties, and repeatedly required her to act against her better judgment as an attorney. As proof that this alleged mistreatment

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

was sex-based, Auer recounted a meeting, held two days before she sent the notice, at which Hemphill had raised concerns about Auer's performance and her interactions with colleagues. According to Auer, Hemphill revealed her bias by comparing Auer to the previous city attorney, who was a man.

The mayor directed three members of the city council, including the council president, to investigate. The council members conducted interviews, received a written response from Hemphill, and filed a report concluding that "no harassment based upon sex occurred." The mayor agreed and closed the case. Hemphill fired Auer the next day, with the blessing of the mayor and the council president.

The city council met a few days later. When the council president opened the floor to "other business," Auer stood and accused Hemphill of violating state and local law by firing her without first consulting the council. Hemphill defended her decision, including the procedure she used. The council then voted unanimously to "ratify and approve" Auer's termination. Afterward, when council members asked why Auer had been fired, the city clerk sent them copies of Auer's notice, Hemphill's written response, and the report the mayor had received. When local news reporters asked the council president about Auer's termination, he mentioned insubordination as the reason for the decision.

Auer sued and eventually advanced three theories of liability: (1) the city fired her in retaliation for reporting illegal sex-based harassment and discrimination; (2) the city unfairly tarnished her professional reputation without giving her a chance to defend herself; and (3) the city retaliated against her for publicly challenging the process that led to her termination. The district court granted summary judgment to the city. On appeal, Auer principally argues that she was entitled to present her theories to a jury.

II.

First, a detour. In addition to her substantive claims, Auer appeals the district court's denial of a motion seeking to sanction the city for its alleged malfeasance in losing evidence. According to Auer, she was entitled to a presumption that the lost evidence proved her allegations.[2] The court held that the grant of summary judgment on the merits mooted Auer's motion. This put the cart before the horse. After all, if Auer was entitled to the presumption she sought, it was premature to grant summary judgment without evaluating whether the presumption itself could create a genuine dispute of material fact on at least some of Auer's claims.

Even so, Auer is not entitled to relief. Precisely because deciding a case based on hypothesized evidence is strong medicine, Federal Rule of Civil Procedure 37(e)(2)(A) expressly states that an adverse presumption requires a finding that electronically stored information was lost because one party "acted with the intent to deprive another party of the information's use in the litigation." *See also Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) ("The ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to suppress the truth . . . .").

Auer did not present sufficient evidence of this serious and specific sort of culpability. She supported her request with allegations that incriminating voicemails, emails, and other electronic communications were lost because the city failed to properly search some computers, tablets, and phones; waited too long to search others; and generally failed to take basic steps necessary to find and preserve files that

---

[2] Auer also sought permission to search for evidence she thinks was never lost but was simply hard to find, such as deleted emails that might still be present in the city's electronic archives. The district court was within its discretion to deny her request, which was undeveloped and unsupported by citations to authority. *Cf., e.g., United States v. Sigillito*, 759 F.3d 913, 933 (8th Cir. 2014).

could be relevant to her case. Still, her allegations would at most prove negligence in the city's handling of electronic information, not the sort of intentional, bad-faith misconduct required to grant an adverse presumption. *See Stepnes v. Ritschel*, 663 F.3d 952, 965 (8th Cir. 2011) (noting that "[s]evere spoliation sanctions, such as an adverse inference instruction, are only appropriate upon a showing of bad faith").

To be sure, intent can be proved indirectly and Auer did not need to find a smoking gun before she could seek sanctions against the city. *See Morris v. Union Pac. R.R.*, 373 F.3d 896, 901–02 (8th Cir. 2004). But without even circumstantial evidence that city personnel had knowledge that relevant files were being lost (if indeed they were), the record cannot support a finding that the city "inten[ded] to deprive" Auer of information she could have used in this case. Fed. R. Civ. P. 37(e)(2); *cf.* Morris, 373 F.3d at 902–03 (holding that it was improper to instruct the jury it could assume missing evidence was unfavorable to a party when the record did not support an inference that the party "consciously permitted" its destruction). The relief Auer sought was therefore unavailable as a matter of law.

III.

On to the centerpiece of the case: the district court's grant of summary judgment to the city. In light of our decision to uphold the denial of Auer's motion for sanctions, we evaluate whether there is a genuine dispute of material fact on the evidence before the district court on summary judgment. Our review is de novo. *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 911 (8th Cir. 2011).

A.

Two of Auer's claims rest on the premise that the city fired her in retaliation for filing the "Notice and Demand" with the president of the city council. Federal and North Dakota law both prohibit firing an employee for opposing an unlawful

employment practice. 42 U.S.C. § 2000e-3(a); N.D. Cent. Code § 34-01-20(1)(a). Although protection under both laws does not depend on proving the illegality of the complained-of conduct, neither statute applies unless the employee *reasonably* believes the conduct was illegal.[3] *See Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1118 (8th Cir. 2006), *overruled on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc); *Opp v. Source One Mgmt., Inc.*, 591 N.W.2d 101, 108 (N.D. 1999).

The allegations in Auer's notice were unreasonable. Auer's only articulated basis for concluding that she was experiencing sex-based harassment was that Hemphill unfavorably compared her work style to the previous city attorney. We cannot infer bias from so little. Auer was a new employee who was, at least in Hemphill's view, struggling with the scope of her responsibilities and her role within city government. Advising her to try an approach that had worked for her predecessor was a sensible management tactic. Without more, the mere fact that Auer's predecessor happened to be male does not transform an ordinary professional interaction into discrimination or harassment. Moreover, and more to the point, it would be unreasonable to think it did.

Over the course of the litigation, Auer shifted to a different (and arguably contradictory) theory of sex-based mistreatment. She now claims that Hemphill engaged in sex stereotyping by suggesting she should be more approachable, more open to feedback, and less aggressive. *See generally Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1038 (8th Cir. 2010) (recognizing sex stereotyping as a form of discrimination). We need not decide whether it would be reasonable to base a

---

[3]Auer insists that the North Dakota statute protects her because the purpose of her notice was to expose illegality. This fact, even if true, only gets her partially there. A whistle-blowing purpose is only one part of proving retaliatory discharge under N.D. Cent. Code § 34-01-20(1)(a). *See Dahlberg v. Lutheran Soc. Servs. of N.D.*, 625 N.W.2d 241, 254–55 (N.D. 2001).

sex-stereotyping claim on such comments, because Auer's new theory has a more fundamental flaw: she never made a report of sex stereotyping, so such a report could not have been the reason the city fired her. *See, e.g.*, *Wallace*, 442 F.3d at 1119 ("The plaintiff [in a retaliation case] must demonstrate that he or she took part in protected conduct . . . and that there exists a causal nexus between the protected conduct and the adverse action."); *accord Opp*, 591 N.W.2d at 108.

To be sure, Auer's notice mentions that Hemphill occasionally commented upon her demeanor and work "style." But nowhere does it suggest that Hemphill's comments were a form of sex stereotyping. Rather, until Auer filed her lawsuit, her lone theory was that Hemphill's criticisms and the comparisons to her male predecessor were a veiled suggestion that a man would be better suited to the position of city attorney.[4] Because the city could not have discharged Auer in retaliation for something she never reported, her sex-stereotyping theory fares no better than her original theory.

B.

Auer's next claim sounds in due process. The sole basis for this claim is that Auer suffered reputational harm from the allegedly false statements about her job performance and termination in the affidavits accompanying the city's summary-judgment motion. *See, e.g.*, *Putnam v. Keller*, 332 F.3d 541, 546 (8th Cir. 2003).

---

[4]Auer has tried to retroactively revise her original allegations in other ways, such as by claiming she reported (and was fired for reporting) additional illegal acts by Hemphill. These unsupported reinterpretations do not control our analysis. We can read the notice ourselves and do not owe Auer deference when she tells us what it says, notwithstanding that she originally wrote it. *See African Am. Voting Rights Legal Def. Fund, Inc. v. Villa*, 54 F.3d 1345, 1353 (8th Cir. 1995) (rejecting plaintiffs' "revised characterization" of their complaint).

Auer cites no authority for the novel proposition that a defendant in a civil action can violate due process simply by submitting evidence in court. Nor is there any authority requiring a litigant to offer a name-clearing hearing or other out-of-court procedure to test the veracity of its evidence. Indeed, imposing such a burden "would penalize forthright and truthful communication . . . between litigants." *Bishop v. Wood*, 426 U.S. 341, 348–49 (1976). And it would make it all but impossible for a public employer to effectively defend itself in litigation. Public employers would face the difficult choice of either withholding evidence to avoid the risk of impugning the plaintiff's reputation or facing potential liability for using it. Nothing requires public employers to make such a choice. *See Gentile v. Wallen*, 562 F.2d 193, 198 (2d Cir. 1977) ("In an adversary setting, the parties must be given latitude to present their case.").

Even aside from the lack of legal support for Auer's theory, the affidavits could not have actually caused her reputational injury. Auer claims the city damaged her reputation around the time she was fired, but the city did not submit the affidavits until long afterward, so just as a nonexistent sex-stereotyping claim could not have caused Auer's termination, statements in the affidavits could not possibly have caused her reputational injury. *See Bishop*, 426 U.S. at 348 ("[S]ince the [challenged] communication was made in the course of a judicial proceeding which did not commence until after petitioner had suffered the injury for which he seeks redress, it surely cannot provide retroactive support for his claim."); *Singleton v. Cecil*, 176 F.3d 419, 429 (8th Cir. 1999) (en banc). This claim too fails as a matter of law.

C.

Auer's final claim is that the city retaliated against her for exercising her First Amendment right to speak out against her termination—a matter of public concern—at the city-council meeting. *See, e.g.*, *Davison v. City of Minneapolis*, 490 F.3d 648, 655 (8th Cir. 2007). Auer first adopted this theory in response to the city's

summary-judgment motion. Even assuming Auer properly raised this theory and that the city council's vote to "ratify and approve" her termination resulted in some additional harm, she still had to present sufficient evidence at summary judgment to support a finding that her speech was a substantial or motivating factor in the council's decision. *See id.* at 654–55.

Auer's only evidence of retaliation was that the city council's vote happened shortly after she spoke. But "more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). And inferring causation from timing would be particularly inappropriate here. After Auer spoke, Hemphill explained why she fired Auer without first consulting the city council. Given that Hemphill's explanation occurred even closer in time to the city council's decision, an obvious alternative explanation for the decision exists. Accordingly, there is no basis for disturbing the district court's grant of summary judgment to the city.

## IV.

A few loose ends remain. Auer seeks to challenge the district court's denial of her motion for additional time to respond to the city's motion for summary judgment, but this issue is not properly before us because she did not raise it in her notice of appeal. *See Hallquist v. United Home Loans, Inc.*, 715 F.3d 1040, 1044–45 (8th Cir. 2013). Auer also argues that the court abused its discretion in awarding litigation costs to the city, but she forfeited any right to challenge the award by failing to respond to the city's motion or otherwise oppose the award before the district court. *See Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 638–39 (8th Cir. 2007). Finally, we grant Auer's unopposed motion to seal certain portions of the record on appeal. *See* 8th Cir. R. 25A(h).

V.

For the foregoing reasons, we affirm the judgment of the district court.

_____